The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated and there is no question of misjoinder or nonjoinder of parties.
3. At the time of the alleged injury the parties were subject to the North Carolina Workers' Compensation Act.
4. The plaintiff's average weekly wage at the time of the alleged injury may be determined from an Industrial Commission Form 22 which is stipulated into evidence.
 ***************
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff was forty-nine years old at the time of the hearing before the Deputy Commissioner
1. He first became employed as an electrician's helper at defendant Salem Electric in November 1994. Before working for Salem Electric, plaintiff worked in the construction industry, driving a dump truck and doing drywall work, and he also had worked at a gas station.
2. On 10 July 1995, plaintiff suffered an admittedly compensable injury by accident when he fell about two feet from a ladder, landing awkwardly and turning his left ankle. Plaintiff finished his work that day and saw a doctor at Prime Care on the next day, 11 July 1995. Plaintiff complained of pain and tenderness in his left ankle and was diagnosed as having a sprain to his ankle. Plaintiff was seen one more time at Prime Care, and then was referred for further evaluation and treatment of his ankle by Dr. Thomas Spangler, an orthopaedic surgeon.
3. Plaintiff first saw Dr. Spangler on 14 July 1995, and after conducting an examination and tests, Dr. Spangler concluded that plaintiff had suffered a sprain of the lateral ankle ligaments, and that he also had an old lesion to the talus. This lesion would have been consistent with a previous trauma to the ankle, and in any event pre-existed the injury of 10 July 1995. Dr. Spangler excused plaintiff from work for several days, and applied an air cast to the ankle.
4. Plaintiff returned to work on 17 July 1995 and thereafter worked for the defendant-employer in light duty positions through 8 September 1995. Plaintiff saw Dr. Spangler for follow-up visits on 4 August and 11 September 1995, and the doctor noted that the ankle sprain was improving. At this time plaintiff also complained of some burning on the top of his foot.
5. On 12 September 1995, plaintiff presented to Kernersville Family Practice with complaints of lightheadedness and feeling as though he was going to pass out. Plaintiff was written out of work at that time.
6. On 15 September 1995, plaintiff presented to his family physician, Dr. Leo Record, with continued complaints of lightheadedness and was taken out of work for four to five additional days.
7. While at home on 17 September 1995, plaintiff alleged that he began to fall. In an attempt to break the fall, he grabbed a chair and jerked his neck and shoulders. Plaintiff did not seek medical attention for this injury.
8. Within the next week, plaintiff received a telephone call from Dr. Spangler in which Dr. Spangler asked plaintiff about his ankle. Plaintiff did not inform Dr. Spangler of the alleged neck injury. Subsequent to the conversation, Dr. Spangler determined that plaintiff could be released to return to full-duty work.
9. On 20 September 1995, plaintiff returned to Kernersville Family Practice with lessening complaints of lightheadedness. Plaintiff received an out of work slip lasting until 25 September 1995. Plaintiff complained of having a "crick" in his neck that had been ongoing for the past three days, but did not mention the alleged incident of 17 September 1995.
10. On 23 September 1995, plaintiff presented to Dr. Preston H. Edwards of Prime Care, complaining of pain in the left side of his neck going down into the back of his shoulder. Plaintiff stated that the pain had been present for the past two days. Plaintiff did not offer a history regarding a specific incident which resulted in the pain. Dr. Edwards ordered an MRI scan, and subsequently referred plaintiff to Dr. William R. Brown, Jr., a neurosurgeon, for examination, evaluation and treatment.
11. Dr. Brown examined plaintiff on 3 October 1995, and ordered a cervical myelogram and post myelogram CT scan. The tests revealed a slight bulge in the disk at C4-5 and 5-6 and a significant extrusion on the left side at C6-7 and a slight defect on the right below C6-7. Dr. Brown believed the condition could have been consistent with cervical arthritis which had reached the stage where it was compressing the nerve. The extrusion to the left at C6-7 was surgically repaired by Dr. Brown on 20 October 1995. Plaintiff sustained a fifteen percent (15%) permanent partial disability rating of the neck as a result of the surgical repair of his neck.
12. On 13 December 1995, plaintiff telephoned Dr. Brown and told him that he felt there might be some confusion or misunderstanding regarding how his symptoms began. Plaintiff related for the first time to Dr. Brown the allegation that he hurt his back while trying to avoid falling when his ankle gave out on 17 September 1995. Prior to the telephone call, Dr. Brown was under the impression that plaintiff had just woken up one morning with the pain in his neck.
13. At the hearing before the Deputy Commissioner, plaintiff testified that he never had any problems with his neck prior to the alleged incident of 17 September 1995. However, on cross examination, plaintiff admitted that he had a history of complaints of lightheadedness which were ultimately diagnosed as arthritis in "the base of [his] skull." In response to defense interrogatories, plaintiff failed to mention any prior difficulties with his neck, or that he had received any treatment for lightheadedness or dizzy spells.
14. The medical records from Kernersville Family Practice indicate that plaintiff was diagnosed sometime prior to 1 February 1994 as having arthritis in his neck, causing headaches. Plaintiff presented at Kernersville at least twice in 1994 with complaints of neck pain.
15. After giving due consideration to the applicability of the general rule encouraging deference to the hearing officer in cases turning upon the issue of credibility, the Full Commission finds that based upon plaintiff's contradictory testimony and statements to his physicians, along with the lack of evidence directly relating plaintiff's neck injury to his compensable ankle injury, plaintiff's testimony of causation is not credible.
 ***************
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to show by the greater weight of the evidence that the alleged incident on 17 September 1995 in which he injured his neck is causally related to the compensable injury to his ankle which arose out of and in the course of his employment with defendant-employer. As there is no causal connection between plaintiff's compensable injury and that which comprises the basis for this action, plaintiff is not entitled to compensation under the Act. N.C. Gen. Stat. § 97-2(6).
 ***************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim for compensation and/or further or additional medical compensation benefits must be and is hereby DENIED.
2. Each side shall bear its own costs.
 S/ _____________________ RENEÉ C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ______________ LAURA K. MAVRETIC COMMISSIONER
RCR:mdg